C. F. CONNOLLY, TRUSTEE, APPELLEE, V. PROVIDENCE WASHINGTON INSURANCE COMPANY, APPELLANT: OMAHA LOAN & BUILDING ASSOCIATION, APPELLEE.

FILED MARCH 2, 1934. No. 28765.

*William C. Ramsey* and *Sherman S. Welpton, Jr.*, for appellant.

*Sidney W. Smith* and *Crofoot, Fraser, Connolly & Stryker*, contra.

Heard before GOSS, C. J., ROSE and PAINE, JJ., and CHASE and ELDRED, District Judges.

ELDRED, District Judge.

This is an action on a fire insurance policy. From a verdict and judgment for plaintiff, defendant insurance company has appealed. Plaintiff filed a cross-appeal contending that the recovery is insufficient in amount.

On the 20th day of September, 1928, the defendant insurance company issued to one John D. Suchart the fire insurance policy involved in this action, insuring a residence property for the sum of $6,000, garage for $1,500, and a chicken house for $150, from said date to September 20, 1931; all of said buildings being upon real estate in Douglas county, the title of which was vested in one John D. Suchart. Mortgage clauses were attached to the policy in favor of the defendant Omaha Loan & Building Association.

On November 10, 1930, Suchart and wife conveyed the property to the plaintiff, C. F. Connolly, trustee.

On December 5, 1930, the insurance policy in question was assigned by John D. Suchart to the plaintiff, C. F. Connolly, trustee, and plaintiff alleges that the insurance company consented to the assignment. The defendant, by its answer, put in issue the question of consent to the assignment.

By the "proof of loss" made by the plaintiff it appears that on the 13th day of January, 1931, at about the hour of 1:23 a. m., a fire occurred which completely destroyed the insured dwelling-house and damaged the garage.

The defendant insurance company, in its answer, admits the fire occurred at the time above stated, and that the dwelling-house was destroyed and the garage damaged thereby; admits the conveyance of the property by Suchart to plaintiff, but alleges that said conveyance was made without the knowledge or consent of the insurance company, and in violation of the terms of the policy, which provided:

"This entire policy, unless otherwise provided by agree-

ment indorsed hereon or added hereto, shall be void * * * if any change, other than by death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process, or judgment or by voluntary act of the insured, or otherwise; or if this policy be assigned before loss."

Further answering, the defendant alleges that on the afternoon of January 13, 1931, and after the fire which occurred in the morning of said date, the defendant, through its agents, Reynolds Brothers, of Fremont, Nebraska, without any knowledge or notice of said fire, was induced by plaintiff to sign a consent to an assignment of said policy from said John D. Suchart to plaintiff; that such consent to said assignment was procured by the fraud or concealment of the plaintiff in failing to disclose to the general agents of this defendant the fact or knowledge of said fire.

The plaintiff, by way of reply, pleads that the defendant insurance company has waived any defense it might have had based upon the time of indorsement of its consent to the assignment of the policy of insurance, because the policy itself with the assignment of the same had been in the hands of the defendant insurance company's agent for several days prior to the fire loss; and further alleges that at no time since said date has the defendant insurance company repudiated its consent to the assignment of the policy, or tendered back, either to John D. Suchart or to the plaintiff herein, any part of the insurance premium; and the plaintiff alleges that the defendant insurance company accepted and retained, and still retains, the full premium upon said insurance policy, and is estopped from asserting any defense based upon the delay in completing the transfer of the insurance policy from John D. Suchart to the plaintiff.

The mortgage clause attached to the policy provided that the insurance, as to the interests of the mortgagee, shall not be invalidated by any acts or neglect of the

mortgagor or owner of the property insured, nor any change in the title of the property, whether by legal process or otherwise; also, that whenever the company shall pay the mortgagee any sum for loss under the policy, and shall claim that as to the mortgagor or owner no liability therefor existed, it shall at once, and to the extent of such payment, be legally subrogated to the rights of the mortgagee to whom such payments shall be made under any and all securities held by the mortgagee for the payment of said debt; or, such company may, at its option, pay to said mortgagee the whole debt secured, with all interest which may have accrued thereon to the date of such payment, and shall thereupon receive from said mortgagee an assignment and transfer of said mortgage debt, with all security held by said mortgagee for the payment thereof.

The defendant insurance company, conceding its liability to the mortgagee under said mortgage clause, paid into court for the mortgagee the sum of $6,023.32, being the amount of the indebtedness secured by the mortgage held by the defendant building association against the insured property, and costs advanced, and prayed that it be subrogated to all of the rights of said building association as mortgagee. The sum paid into court was accepted by the mortgagee, and an assignment of mortgage made by mortgagee to the defendant insurance company. However, verdict having been returned for the plaintiff, the trial court, on entering judgment on the verdict, also entered decree canceling this mortgage.

The court properly instructed the jury that the burden was upon the plaintiff to prove, by a preponderance of the evidence, that the defendant consented to the assignment of the rights under the policy by Suchart to the plaintiff; but in the same connection qualified the instruction by adding thereto, "or that he made a full disclosure to the defendant company of the facts concerning the assignment and that the failure to complete the consent to the assignment before the fire was due to negligence

of the defendant or its agents." And by instruction No. 7, the jury were advised: "You are instructed that under the law of Nebraska, when an insurance policy is delivered to an insurance company for the purpose of securing its consent to an assignment of the interest of the insured therein, and the transfer of the insurance to another party, it is the duty of the insurance company to act within a reasonable time in the premises by either consenting to said assignment or notifying the insured that it will not consent, so as to enable him to procure other insurance."

Appellant contends that by these instructions an issue was interjected into the case that was not involved under the pleadings. This contention appears well founded. The question of negligence was not raised by the pleadings. The allegations of the plaintiff's petition as to that phase of the case being: "Which said assignment was duly accepted by the defendant Providence Washington Insurance Company and the consent of said insurance company to said assignment from John D. Suchart to the plaintiff herein, C. F. Connolly, trustee, was duly indorsed upon said insurance policy."

By the instruction referred to the trial court submitted to the jury, and gave the plaintiff the benefit of, an issue not raised by the pleadings. The submission of that issue was prejudicial to the rights of the defendant.

The appellant further contends that the verdict and judgment are not supported by the evidence. The vital question under the issues in this case was: Had the defendant insurance company consented to the assignment of the insurance policy by John D. Suchart to the plaintiff prior to the time the property was destroyed by fire? It is contended by the defendant that plaintiff concealed from defendant's agent, Wilson B. Reynolds, the fact that the fire had occurred which had destroyed the house and damaged the garage, until after the plaintiff had induced such agent to execute the company's consent to the as-

signment of the policy. The agent, Reynolds, called by the defendant, testified:

About 3 o'clock in the afternoon our office received a long distance telephone call from Omaha. Some one was speaking from the Omaha Loan & Building Association, and they referred to a policy that they wanted assigned; and I told them I had written a letter that morning in regard to that policy, and they asked if it had been mailed back to them. I told them no, that my letter would be self-explanatory; that I desired some information in regard to what this trusteeship was about. The gentleman who talked with me said that some one was coming out to see me about the assignment of this policy. Approximately an hour afterwards Mr. Connolly came to the office. He said he wanted to talk with me about this trusteeship and explain it to me. He said, "I can tell you all about it," so he went into a rather lengthy explanation. I then questioned him on matters pertaining to the tenant on the property, whether it was occupied or not. He said, "Yes." I said, "By a good reliable family?" He said, "Yes; so far as I know." He said so far as he knew there was nothing irregular about this; that the property was in good physical condition; that he was in close touch with it and that it was well rented and occupied. I thanked him for going into all the details concerning it, and I took this policy which had been filled in by some one, the assignment had, and I signed my name. I handed the policies to Mr. Connolly and he by that time was putting on his overcoat. Then he went outside of the railing and I had given him the policies. He stood there for just a moment or two before he left, and he said, "Well, Mr. Reynolds, I don't know how serious it is, but there was a fire on this property last night." I said, "Well then, I should say this assignment is of no benefit to you." I said, "I consented to it after the fire has occurred," and I said it should not govern. "Q. Did Mr. Connolly ever at any time, up to the time you had delivered to him the policies of insurance with

the consent to assignment indorsed on them, disclose to you that there had been a fire on the property? A. No, sir; not in any way. * * * Q. Did you ever execute the consent to the transfer of this until the afternoon of January 13? A. No; not until about 4:30 in the afternoon of January 13, 1931. Q. Which was after the fire occurred? A. After the fire occurred; yes, sir. Q. And before you knew that the fire had occurred, as a matter of fact? A. Yes, sir."

This witness is corroborated by the letter referred to in his testimony written to the Omaha Loan & Building Association prior to his receiving notice of the fire. The letter bears date of January 13, 1931, and reads: "Your letter addressed to W. L. O'Keefe has been referred to us for attention, together with the two policies. Before indorsing these policies to cover the interest of C. F. Connolly, trustee, please advise us fully as to the nature of the trusteeship, also how the property is occupied at the present time and what revenue it is bringing in."

On the same subject the plaintiff in his own behalf testified: I drove out to Fremont that afternoon; saw one of the Reynolds Brothers; told him about the fact that I was acting as trustee for the widow and child of Peter Duque De Estrada, and all about the rather peculiar history of the case, and about the fire. I told him that I had been under the impression the insurance was assigned a long time ago, but only happened to check it up on that particular day because we had a fire that morning, but that otherwise I would not have known anything about the failure to complete the insurance transference, because I had known nothing about there being any delay or the policies being sent to the wrong office. Well, as I recall, when I mentioned the fire, he said, "Just a little fire in one of the outbuildings?" I told him, "No; it was a fire in the main building, in the main residence." He said perhaps it was not important, and I told him that, as I understood it, it was a serious fire, but I did not know the extent of it. Well, he said, "As long as you

have made a good faith effort to transfer this insurance, the company will make no objection but will pay the money." He executed the consent to the assignment that day when I was out there. Some of this conversation was before the policy was actually delivered to me and some of it was after the policy was delivered to me. As to when he actually signed his name to the consent I do not know, because that was done in the back part of the office. The actual signing of his name was not done in my presence, the signing of his name as agent for the company. I met Mr. Reynolds on the one occasion, in his office, and some of the conversation was prior to the actual delivery of the policies to me; some was while I stood there holding them in my hand, and some of it was while I stood there with the policies in my pocket. Now, to pick out each portion of the conversation would be somewhat difficult. "Q. Then, you don't recall definitely whether you told him about the fire prior to the time he handed you the policies, indorsed with the consent to the assignment on them,—before you received the policies or after you received them, do you? A. It is my recollection that I told him that just as he handed me the policies, all in one transaction. Q. That is, right after he handed you the policies, then you told him there had been 'a fire on the premises? A. It is my idea that it was simultaneously. * * * Q. And during the course of that extended conversation, prior to the time the assignment was indorsed on the policy, did you at any time mention that there had been a fire on the premises? A. I can't tell you that definitely. It was all in the same interview, but I couldn't tell you whether I told him before he signed his name to the policies that there had been a fire, because I don't know when he signed his name to the policies, and I can't tell you whether I told him that before he handed them to me."

From a consideration of the evidence we conclude that plaintiff failed to sustain the burden of proof resting upon him. It is clear from the evidence that the agent of the

appellant never indorsed the consent of the company to the assignment of the insurance policy until after the fire. We conclude further, from the weight of the evidence, that at the time such consent was given the agent of the company did not know that a fire had already occurred, which had destroyed the residence and damaged the garage covered by the policy.

In this case the terms of the policy involved provide that the policy shall be void if any change take place in the interest or title to the subject of the insurance, other than by death of the insured, or if the policy be assigned before loss, unless the assent of the company shall be indorsed thereon or added thereto. Under such circumstances the general rule is that any assignment of the policy, to be valid and operative, must be with the consent of the insurance company. *Stephenson v. Germania Fire Ins. Co.*, 100 Neb. 456; *New England Loan & Trust Co. v. Kenneally*, 38 Neb. 895; *St. Paul Fire & Marine Ins. Co. v. Ruddy*, 299 Fed. 189. It appearing from the weight of evidence that the defendant company indorsed the assent to the assignment of the policy after the fire which destroyed the residence and damaged the garage in question, and without notice of such fire, its consent to such assignment is void. *Johnston v. Indiana & Ohio Live Stock Ins. Co.*, 94 Neb. 403.

It follows that the evidence was insufficient to sustain the verdict of the jury or the judgment of the trial court thereon, or to sustain the decree of the trial court canceling the mortgage held by the Omaha Loan & Building Association which had been assigned by that association to the insurance company.

The judgment and decree of the district court is therefore reversed and cause remanded.

REVERSED.