NATIONAL AMERICAN INSURANCE COMPANY, a Nebraska corporation, Plaintiff,

v.

JAMISON AGENCY, INC., et al., Gerald Bollinger and Capital Systems Corporation, Defendants.

NATIONAL AMERICAN INSURANCE COMPANY, a Nebraska corporation, Third Party Plaintiffs,

v.

JAMISON AGENCY, INC. and Gerald Bollinger, Third Party Defendants.

CAPITAL SYSTEMS CORPORATION, Third Party Plaintiff,

v.

A. J. R., INC., formerly Pinkerton Madden Burford, Inc., Third Party Defendant.

No. CIV 71–95S.

United States District Court, D. South Dakota, S. D.

Jan. 14, 1974.

**1072**

—◆—

John R. McDowell, of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, S. D., and Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, Omaha, Neb., for National American Ins. Co.

Joe Barnett, of Siegel, Barnett, Schutz, O'Keefe & Ogborn, Aberdeen, S. D., for Jamison Agency, Inc., and Gerald Bollinger.

G. J. Danforth, Jr., of Danforth, Danforth & Johnson, Sioux Falls, S. D., for Capital Systems Corp.

Michael F. Pieplow, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for A. J. R., Inc.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This case is presented for decision on stipulated facts.

Plaintiff, National American Insurance Company, a Nebraska corporation, on March 13, 1969, issued a fire insurance policy to L. J. Van Dyke and Van Dyke La Arc, Inc. It provided coverage on a portion of a wood-working plant located in Woonsocket, South Dakota. It extended over a period of three years, with the premium of $3732.00 to be paid on a deferred plan, annual installments being due on March 13th of each year. The policy contained a provision which prohibited its assignment without the written consent of the company.

Jamison Agency, Inc., a South Dakota corporation of which Gerald Bollinger was president and controlling shareholder, acted as the agent for Van Dyke La Arc in obtaining the policy. It had served Van Dyke La Arc in obtaining insurance policies for some time previously. Jamison Agency brokered the

policy through the Sioux Agency, of which R. J. Hoffman was the president, which in turn brokered the policy through Insurance Facilities, Inc., the general agent of the plaintiff, National American.

On or about May 10, 1969, Capital Systems Corporation, an Illinois corporation, purchased all the stock of Van Dyke La Arc, Inc. Jamison Agency notified Sioux Agency of the acquisition, and National American issued a change endorsement deleting the name "L. J. Van Dyke" as an insured under the policy. Following the acquisition, beginning sometime in June of 1969, A.J.R. Inc., formerly Pinkerton Madden Burford, Inc., a Nebraska corporation, became insurance consultants for Van Dyke La Arc, Inc. The division of responsibilities between A.J.R., Inc., and Jamison Agency, Inc., with respect to the securing and maintaining of insurance policies has been one of the more ambitiously contested issues. For reasons later to be set forth, I find it unnecessary to resolve that issue.

In December of 1969, Van Dyke La Arc, Inc., was dissolved under South Dakota law, and all property and assets of that corporation, including the National American policy, were distributed to its sole shareholder, Capital Systems. Neither Bollinger nor anyone at the Jamison Agency were informed of, nor did they have independent knowledge of, the transfer of assets. Mr. Jack Moores, president of Capital Systems, stated that no instructions were ever given to inform National American of the dissolution or the transfer of assets, and National American in fact neither received notification of, nor consented to, the assignment of the policy. Although A.J.R., Inc., knew that the name of the wood-working business was changed from Van Dyke La Arc, Inc., to Capital Systems Corporation (this is evident from the fact that A.J.R., Inc., secured name change endorsements on policies written through its agency), A.J.R., Inc., had no knowledge of the dissolution of Van Dyke La Arc, Inc., and the trans-fer of assets to Capital Systems Corporation.

On July 26, 1970, Jamison Agency received a bill from Sioux Agency for $896.40, which supposedly represented the annual premium installment due National American on the Van Dyke insurance policy. The Jamison Agency replied with a letter dated July 17, 1970, and stated: "We noticed this for cancellation last October as it was replaced in toto and that since October 1969 all of the coverage has been supplied by the Hartford." Sioux Agency replied with the following letter dated July 29, 1970:

> Enclosed please find lost policy receipt for the above captioned, please secure the signature and return.
>
> It seems the company just came across this March renewal and forwarded it; we, too, billed it—all of which was in error.
>
> Sure am sorry for the confusion caused.

Without consulting Van Dyke La Arc, Bollinger's secretary, Charlotte Brewer, signed "Van Dyke Co. Inc." to that portion of the Lost Policy Cancellation Release designated for the signature of the insured and "Jamison Agency, Inc." to that portion of the release designated for the signature of the agent. The two signatures were in different colored ink. In her deposition, she testified that Mr. Bollinger had been on vacation at this time but that he subsequently approved of the action and he never told her to notify anyone of her action. Sioux Agency then sent the Lost Policy Cancellation Release to National American and National American cancelled the policy on its books.

On October 13, 1971, a fire destroyed a great portion of the insured premises resulting in a policy claim against National American in the amount of $35,000.

National American Insurance Company brought a declaratory judgment action against Van Dyke La Arc, Inc., seeking a declaration that the policy was not in force and effect at the time of

the fire and, in the alternative, against Jamison Agency and Gerald Bollinger seeking a declaration that said defendants are responsible for any award adjudicated against National American. Defendant, Van Dyke La Arc, Inc., now Capital Systems Corporation, counterclaimed against National American and cross-claimed against Jamison Agency and Gerald Bollinger. Capital Systems brought a third party complaint against A.J.R., Inc., formerly Pinkerton Madden and Burford, seeking judgment in the amount of the loss in the event it is determined that the National American policy was not in full force and effect at the time of the fire.

The first issue which must be resolved is whether National American is liable to Capital Systems for the fire loss. National American contests its liability on two grounds: (1) that the assignment of the insurance policy from Van Dyke La Arc, Inc., to Capital Systems Corporation operates to preclude coverage; or, (2) that the actions of Charlotte Brewer in signing the Lost Policy Cancellation Release for Van Dyke La Arc, Inc., operates as an effective cancellation of the policy.

If it is determined that National American is liable to Capital Systems, the question becomes whether National American is entitled to be indemnified by Jamison Agency for Miss Brewer's failure to properly cancel the policy.

If it is determined, on the other hand, that National American is not liable to Capital Systems, then it must be determined whether Capital Systems can recover its fire loss from either Jamison Agency or from A.J.R., Inc. Capital Systems' claim against Jamison Agency is based upon two grounds: (1) negligent cancellation of the policy; (2) negligent failure to procure National American's consent to the assignment of the policy. Capital Systems' claim against A.J.R., Inc., is based upon two grounds: (1) breach of the agency contract to maintain the requisite coverage for Capital Systems; (2) negligent failure to procure the consent of National American to the assignment of the policy.

For reasons given hereinafter, this Court holds that National American is not liable to pay the loss and that Capital Systems cannot recover the amount of that loss from either Jamison Agency or Bollinger or from A.J.R., Inc.

■ A fire insurance policy is a contract to indemnify the owner of property against loss and does not attach to or run with the property. Connolly v. Providence Washington Insurance Co., 126 Neb. 303, 253 N.W. 340 (1934). This general rule of law ·is ensconced within National American's insurance policy by that provision requiring written consent of the company before the policy can be assigned. When Van Dyke La Arc, Inc., was dissolved in December of 1969, all of that corporation's assets, including the National American policy, were assigned by operation of law to Capital Systems Corporation. The written consent of National American was never obtained. There was thus no contract between National American and Capital Systems at the time of the fire.

■■ It is also evident that Capital Systems cannot recover its loss from either Jamison Agency or from A.J.R., Inc. Capital Systems suffered its loss because of the unconsented assignment of the policy. No matter how diligently Jamison Agency and A.J.R., Inc., had carried out their responsibilities toward Capital Systems, if they neither were notified nor had acquired knowledge of the assignment of the policy, there was nothing they could have done to prevent the loss. This Court finds that they neither were notified by Capital Systems nor had acquired knowledge of the assignment. The record indicates that A.J.R., Inc., was aware that the name of the corporation had been changed, but nowhere is it indicated that A.J.R., Inc., knew about the dissolution of Van Dyke La Arc, Inc., and the assignment of the policy to Capital Systems Corporation. And surely it cannot be held that A.J.R.,

Inc., had any affirmative duty to investigate and insure Capital Systems' compliance with the various policy provisions.

This Court therefore holds for the plaintiff, National American and against the defendant and counterclaimant, Capital Systems; for the defendant, Jamison Agency and Gerald Bollinger, and against the cross-claimant, Capital Systems; and for the third party defendant, A.J.R., Inc., and against the third party plaintiff, Capital Systems Corporation.

This memorandum decision shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.