**IMPERIAL ENTERPRISES, INC., d/b/a Imperial Carpet Mills, Inc., Plaintiff-Appellant-Cross Appellee,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Defendant-Appellee-Cross Appellant.**

**No. 74–3830.**

United States Court of Appeals, Fifth Circuit.

July 14, 1976.

Rehearing and Rehearing En Banc Denied Sept. 22, 1976.

William H. Horton, Chattanooga, Tenn., Dudley B. Magruder, Jr., Rome, Ga., Charles J. Gearhiser, Chattanooga, Tenn., for Imperial Enterprises, Inc.

Oscar M. Smith, Rome, Ga., for Fireman's Fund.

Before GEWIN and AINSWORTH, Circuit Judges, and MARKEY *, Chief Judge.

* Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

GEWIN, Circuit Judge:

Appellant, "Imperial Enterprises, Inc. d/b/a Imperial Carpet Mills, Inc.," instituted this diversity action in the Northern District of Georgia to recover on a fire insurance manufacturer's output policy issued by appellee Fireman's Fund Insurance Company (Fireman's Fund). The district court rejected appellant's claim for reform of the policy and denied its motion for summary judgment, but granted Fireman's Fund's motion for summary judgment. It held that the statutory merger of Imperial Enterprises, Inc. (Imperial Enterprises) and Imperial Carpet Mills, Inc. (Carpet Mills), whereby Carpet Mills' property, including the fire insurance policy in question, was transferred to Imperial Enterprises, was an invalid assignment of the policy that resulted in forfeiture of coverage.[1] Appellant challenges this ruling. Fireman's Fund cross-appeals from the district court's denial of its motion to amend its answer to add a counterclaim. With respect to the appeal by Imperial Enterprises, we reverse and remand; with respect to the cross-appeal, we affirm.

Carpet Mills is a carpet manufacturing firm that was incorporated in Georgia in 1959. Imperial Enterprises was incorporated in Georgia in 1965. Its sole assets consisted of Carpet Mills' stock and a note from that corporation.

In 1969 Fireman's Fund issued Policy No. MXP 156 07 45 (hereinafter building policy), which named Carpet Mills and/or Paul Kamens[2] as the insured parties. This fire insurance policy covered the Carpet Mills plant and also provided coverage for business interruption losses. A second fire insurance policy, No. OP 10 19 (hereinafter output policy), was issued by Fireman's Fund to Carpet Mills, the only named insured, in 1970. This policy covered personal property, including the inventory-output still owned by Carpet Mills, in the Carpet Mills plant.

Carpet Mills and Imperial Enterprises were merged in November, 1971 pursuant to the Georgia statutory merger scheme. Imperial Enterprises was the surviving corporation, but business continued as before under the Carpet Mills trade name. The premiums for both fire insurance policies, for instance, were paid with Carpet Mills' checks. Upon consummation of the merger, Carpet Mills' assets, including the fire insurance policies, were transferred to Imperial Enterprises by operation of law.[3] Articles of merger were properly filed in various state and local offices and the merger was reported in a newspaper. Carpet Mills did not, however, take any action to assign the policies to Imperial Enterprises. Fireman's Fund was not notified concerning the transfer of the policies and did not, of course, consent to it.

In May of 1972 an extremely costly fire occurred at the Cartersville, Georgia plant of Imperial Enterprises. The plant and its contents were substantially damaged. Shortly after the fire Imperial Enterprises furnished Fireman's Fund with a copy of its fiscal 1972 financial statements, which were in its name and contained a footnote concerning the merger. Checks signed by Carpet Mills continued to be accepted by Fireman's Fund for premiums on the output policy, until its cancellation some seven or eight months after the fire.

Relying on a proof of loss statement by a party purporting to sign for Carpet Mills, Fireman's Fund paid over $34,000 on the building policy in August, 1972. Fireman's Fund denied liability under the output policy, however, stating that Carpet Mills had undervalued its inventory, thereby reducing its premiums on this policy. It asserted the alleged wrongful assignment without its

---

1. The court also rejected appellant's contentions that Fireman's Fund had waived its anti-assignment defense or was estopped from asserting it. In view of our resolution of this case, it is unnecessary for us to consider the correctness of the district court's ruling on these contentions.

2. Kamens was the president of both Carpet Mills and Imperial Enterprises.

3. *See* note 5 *infra* and accompanying text.

consent as a basis for denying liability in its answer to the complaint below. This was the first mention of this reason for avoiding the policy coverage.[4]

■ Since this is a diversity case, the district court quite correctly held that it was bound to follow Georgia substantive law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties have conceded, however, that there is no Georgia law on the narrow issue presented in this case: whether a no-assignment clause in a fire insurance policy is violated by a transfer, without consent, resulting from the statutory merger of two companies, unaccompanied by any demonstrated increase in risk or hazard. This hiatus in Georgia law does not frustrate our adherence to *Erie*; in such circumstances we are obliged to resolve the issue as the Georgia state courts would. To make an intelligent vicarious determination of this question, we look to all relevant sources to which the Georgia courts would look. *Tompkins v. City of El Paso*, 449 F.2d 842 (5th Cir. 1971). We turn first to the general principles of Georgia insurance law.

■ An insurance contract, like every other contract, is governed by its terms and conditions, and general rules concerning the construction of contracts apply, Ga. Code Ann. § 56–2419 (1971); *Parris & Son v. Campbell*, 128 Ga.App. 165, 196 S.E.2d 334 (1973). Accordingly, unambiguous terms and conditions must be enforced as written, thereby, presumably, fulfilling the mutual intent the parties had in entering into the agreement. *See Moore v. Allstate Insurance Co.*, 108 Ga.App. 60, 131 S.E.2d 834 (1963).

■ Extant statutory provisions are, in effect, "read into" all insurance contracts to which they apply, and they form integral parts thereof. *Thames v. Piedmont Life Insurance Co.*, 128 Ga.App. 630, 197 S.E.2d 412 (1973). Anti-assignment provisions are explicitly permitted under Georgia law.

*See* Ga. Code Ann. § 56–2423 (1971). Thus, where an insured conveyed his insured automobile without obtaining the insurer's consent, in violation of both a statute and the policy, coverage was forfeited. *Curtis v. Girard Marine Insurance Co.*, 190 Ga. 854, 11 S.E.2d 3 (1940).

■ When, however, the policy and a statute conflict, the latter prevails. *American Casualty Co. v. Southern Stages*, 70 Ga.App. 22, 27 S.E.2d 227 (1943). Furthermore, the insurer carries the burden of employing language in its policy that is clear and precise as to prohibitions. *Travelers Insurance Co. v. Mixon*, 118 Ga.App. 31, 162 S.E.2d 830 (1968). Since insurance policies are contracts of adhesion penned by the insurer, when ambiguity is present, construction of the policy is in favor of the insured, although it must not be unreasonable or strained. *Mutual Life Insurance Co. v. Bishop*, 132 Ga.App. 816, 209 S.E.2d 223 (1974); *Mattox v. New England Mutual Life Insurance Co.*, 25 Ga.App. 311, 103 S.E. 180 (1920). Thus, if two or more reasonable interpretations are possible, the reading most favorable to the insured is adopted. *Burke v. Life Insurance Co.*, 104 Ga.App. 865, 123 S.E.2d 426 (1961). A crucial principle is that insurance policies are construed so as to avoid forfeitures, *Jones v. North Carolina Mutual Insurance Co.*, 122 Ga.App. 383, 177 S.E.2d 199 (1970); *Cotton States Mutual Insurance Co. v. Torrance*, 110 Ga. App. 4, 137 S.E.2d 551 (1964), *aff'd*, 220 Ga. 639, 140 S.E.2d 840 (1965), and to provide coverage, *Ranger Insurance Co. v. Culberson*, 454 F.2d 857 (5th Cir. 1971), *cert. denied*, 407 U.S. 916, 92 S.Ct. 2440, 32 L.Ed.2d 694 (1972) (applying Georgia law). We turn now to an application of these general principles of Georgia law to this case.

In its output policy Fireman's Fund proscribed assignment in the following language (¶ 23), "Assignment of interest under this policy shall not bind the Company until its consent is endorsed thereon." However,

4. The Georgia courts apparently do not follow the principle adhered to in some jurisdictions, *see London & Lancashire Ins. Co. v. McWilliams*, 218 Ala. 503, 119 So. 15 (1928), that an insurer's denial of liability solely on one ground waives all other policy defenses. *See Brown v. Savannah Mutual Ins. Co.*, 24 Ga. 97 (1858).

the relevant provision of the Georgia statutory corporate merger scheme provides:

> [A]ll property, real, personal and mixed . . . and all other choses in action and all and every other interest of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in such [the surviving] corporation *without further act or deed* . . .[5]

We find it unnecessary to decide whether this statutory provision effectively overrides the policy's anti-assignment clause; instead, we have concluded that the clause's application is at least ambiguous in the circumstances of this case, in light of the developing Georgia law in this area.[6]

In other situations involving involuntary transfers of policies, and transfers occurring by operation of law, the Georgia courts have consistently held that anti-assignment clauses do not operate to defeat coverage. For example, in *Peoples & Planters' Mutual Fire Ass'n v. Wyatt*, 31 Ga.App. 684, 121 S.E. 708 (1924), the Georgia Court of Appeals held that the passing of title to property, including the insurance policy, from the wife to the husband that occurred because of the former's death did not void the policy, despite the presence of a no-transfer clause much broader than the clause in Fireman's Fund's output policy.

In the case of *Universal Life Insurance Co. v. Finance Corp.*, 118 Ga.App. 160, 161, 162 S.E.2d 813, 814–15 (1968), the Georgia court refused to enforce a no-assignment provision in a life insurance policy on a debtor's life that had been issued in part for the creditor's benefit. The initial creditor had assigned the note to another creditor, which was the party claiming under the policy. The court concluded that Georgia statutory provisions that were enacted for the benefit of creditors effectively overrode the policy's no-assignment clause.[7]

The rationale of the Georgia courts for not applying no-assignment clauses to avoid coverage when assignments are involuntary or by operation-of-law is evidenced by the partnership and tenancy-in-common cases. The reason is a very pragmatic one: such transfers do not entail any increase in the risk or hazard assumed by the insurer. *Compare Georgia Home Insurance Co. v. Hall*, 94 Ga. 630, 21 S.E. 828 (1894), *with Hartford Fire Insurance Co. v. Liddell Co.*, 130 Ga. 8, 11, 60 S.E. 104, 106 (1908), *and Merchants Fire Assurance Corp. v. Tucker*, 56 Ga.App. 139, 192 S.E. 315, 316 (1937).

Indeed, both Georgia statutes and cases now approach issues of insurance coverage from an increased risk or hazard *vel non* perspective. Section 56–2409 of the insurance code, for instance, provides in relevant part:

> a river composed of the old rivers, which still exist, though in a different form. So it is with a consolidated corporation. A new corporation is formed, *but not in the sense which works a destruction of the rights of action existing against the old one.*" (emphasis added by Georgia Court of Appeals).

5. Ga. Code Ann. § 22–1007(b)(4) (1970) (emphasis added).

6. Fireman's Fund argues that Imperial Enterprises cannot recover because it is not the named insured. The district court accepted this contention, adopting it as an alternative basis of its decision. The analysis utilized and conclusion reached concerning the assignment issue apply equally to this proposition. *See generally Atlanta Newspapers, Inc. v. Doyal*, 84 Ga.App. 122, 128, 65 S.E.2d 432, 437 (1951) (merged corporation was not "defunct in the manner of a corporation whose charter had expired, but [was], *in toto*, a vital but inseparable part of" surviving corporation). The court quoted the following unique language in its opinion:

> "the consolidation of two or more corporations is like the uniting of two or more rivers, neither stream is annihilated, but all continue in existence. A new river is formed, but it is

7. The crucial factor in these cases is whether the transfer occurred by operation of law or involuntarily as opposed to a personal, voluntary assignment by the insured. Compare the *Peoples & Planters'* and *Universal Life* cases to, for example, *Curtis v. Girard Fire & Marine Ins. Co.*, 190 Ga. 854, 11 S.E.2d 3 (1940) (no transfer clause enforced where insured voluntarily sold covered property), and *First National Bank v. Colonial Fire Underwriters' Ins. Co.*, 160 Ga. 166, 170, 127 S.E. 455, 457 (1925) (court refused to apply statute applicable to transfers by operation of law where transfer occurred by voluntary assignment by insured).

. . . Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless: (1) Fraudulent; or (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or (3) The insurer in good faith would either not have issued a policy or contract in as large an amount, or at the premium rate as applied for, or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.[8]

Moreover, in *Wallace v. Virginia Surety Co.*, 80 Ga.App. 50, 52, 55 S.E.2d 259, 261 (1949), the Georgia Court of Appeals described as "elementary" the principle that "an insurance company is discharged from liability under its policy if the risk is materially increased." In diversity cases this court has not failed to heed and follow this doctrine. *See Pearl Assurance Co. v. Southern Wood Products Co.*, 216 F.2d 135 (5th Cir.), *rehearing denied*, 217 F.2d 234 (5th Cir. 1954).

Accordingly, it is our conclusion that the Georgia courts would utilize a risk-focused analysis in resolving the question presented in this case. This approach was utilized by the Eighth Circuit recently in a case almost identical to the instant one. In *National American Insurance Co. v. Jamison Agency, Inc.*, 501 F.2d 1125 (8th Cir. 1974), the insurance company brought a diversity action in federal court seeking a declaratory judgment that its fire policy was not in force at the time of the fire. The policy in question contained the standard no-assignment clause like the one involved in this case. The policy had initially been issued to L. J. Van Dyke and Van Dyke La Arc, Inc. (La Arc). Capital Systems Corp. then purchased all the La Arc stock. The policy was

thereupon amended to name La Arc as the sole named insured.

Subsequently, La Arc was legally dissolved under the South Dakota Business Corporations Act and its assets were distributed to its sole shareholder, Capital Systems. The insurance policy was among these assets, but the insurance company was never informed of the dissolution and transfer of assets and had not, of course, consented to the policy's transfer. After the statutory dissolution the insured premises were substantially destroyed by a fire. The district court held that the policy was not in force because the insurer had neither been informed of nor consented to the statutory transfer from La Arc to its sole shareholder.

The Eighth Circuit reversed and remanded, holding that the anti-assignment provision did not apply in these circumstances. Reasoning that the dissolution and statutory transfer had not increased the risk or hazard of loss, the court concluded:

> Once it is seen that there is no reason to apply the rule in the instant case it becomes clear that to do so would place form over substance and would conflict with the oft-expressed doctrine that forfeitures of insurance policies are not favored in the law and are to be avoided whenever possible.

501 F.2d at 1128. The court went on to cite the partnership and transfer by operation of law exceptions to no-assignment provisions as additional support for its conclusion.[9]

■ The *National American* reasoning and conclusion are quite persuasive to us. Since the transfer of the policy to Imperial Enterprises occurred by operation of law rather than through a personal assignment by Carpet Mills, we are unable to conclude that the no-assignment provision unambiguously and unquestionably applied to this

---

8. Ga. Code Ann. § 56–2409 (1971).

9. Like the *National American* court, *see* 501 F.2d at 1130 n. 1, we choose not to rest our decisions solely on the fact that this transfer occurred by operation of law. Rather, it is the

complete lack of any alteration in the insured-against risks or hazards in this particular transfer that we find to be the most compelling reason for not applying the no-assignment clause in this case.

transfer. Accordingly, we interpret the policy in the insured's favor and so as to avoid a forfeiture, since the statutory merger caused no increase in the risks or hazards incurred by Fireman's Fund. Thus, it is our conclusion that the no-assignment clause should not be applied ritualistically and mechanically to forfeit coverage in these circumstances.[10] The district court erred in granting summary judgment for the insurer.[11]

With respect to the cross-appeal, Fireman's Fund asserts that the district court erred in not allowing it to amend its answer to allege a counterclaim against Imperial Enterprises. The counterclaim sought recovery of the amount allegedly paid mistakenly on the building policy. The district court refused to permit it on the grounds of untimeliness and its permissive nature. In view of the untimeliness of the attempted amendment—Fireman's Fund was aware of the facts underlying its alleged counterclaim for almost a year before it made its motion—we are unable to conclude that the district court abused its discretion in denying the motion to amend with respect to the counterclaim. *See, e. g., New Britain Machine Co. v. Yeo*, 358 F.2d 397, 409–10 (6th Cir. 1966); *Kirbens v. Wodis*, 295 F.2d 372, 375 (7th Cir. 1961). Moreover, the gravamen of the attempted counterclaim is fraud based on appellant's failure to inform Fireman's Fund of the merger and resultant policy transfer. We have already rejected this argument. Accordingly, the district court's rejection of the counterclaim was not error.

We intimate no opinion concerning any other claims or defenses that might be asserted by either party at the trial on the merits.

REVERSED and REMANDED on the main appeal; AFFIRMED on the cross-appeal.

---

10. Fireman's Fund cites the recent Georgia case of *Langley v. Pacific Indemnity Co.*, 135 Ga.App. 29, 217 S.E.2d 369 (1975), as support for its position. *Langley*, however, is distinguishable from the instant case in the two factors that we consider critical. In the first place, the transfer in that case occurred through the personal action of the insured rather than by operation of law. Secondly, the transfer entailed the substantial likelihood of alteration in the risk assumed by the insured; the case involved the transfer of an automobile from the named insured to another driver. Moreover, the original insured and the insurer

had agreed to cancellation of the policy and the claimant had not paid any premiums for it. All these factors are, of course, very different from those presented in this case.

11. The prevailing rule in the states is in accord with the result we reach. *See* Note, "Effect of Merger & Consolidation on Property, Rights & Franchises of the Constituent Corporations," 38 *Va.L.Rev.* 496, 500–02 (1952); 43 *Am.Jur.2d*, Insurance, § 688 at 685–86 (1969). *Cf.* Note, "Effect of Corporate Reorganization on Nonassignable Contracts," 74 *Harv.L.Rev.* 393 (1960).