**PAXTON & VIERLING STEEL CO., a corporation, Plaintiff,**

v.

**GREAT AMERICAN INSURANCE COMPANY, a corporation, Defendant.**

**Civ. No. 79–0–618.**

United States District Court,
D. Nebraska.

Sept. 29, 1980.

---

Janet T. Tungland, Omaha, Neb., for plaintiff.

Theodore J. Stouffer, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

This matter is before the Court upon motions for summary judgment submitted by both plaintiff and defendant [Filings # 11 and # 14, respectively].

*Facts and Background*

Defendant, Great American Insurance Company, issued a policy of liability insurance to plaintiff, Paxton & Vierling Steel Company (PVS). The policy (No. SLP 5–25–28–81) was effective for the period December 1, 1971 through December 2, 1972. Owen Equipment & Erection Company (OE & E) was a wholly–owned subsidiary of PVS throughout this period. OE & E was an additional named insured on the policy issued to PVS. The policy contained typical "non–assignability" and "no action against insurer" clauses (Policy SLP 5–25–28–81, Conditions, paragraphs 10 and 7, respectively).

On November 24, 1972, Geraldine Kroger, Administratrix of the estate of James D. Kroger, filed a Complaint against OE & E and PVS in the United States District Court for the District of Nebraska [Civil No. 72–0–481]. The Complaint as amended alleged that the decedent was electrocuted on January 18, 1972, and that OE & E's negligence in its operation of a crane supplied by it was the direct and proximate cause of the decedent's death. The defendant insurance company undertook the defense of OE & E and PVS, although PVS was dismissed on the Court's own motion early in the litigation. The case later reached the United States Supreme Court. On June 21, 1978, the Supreme Court dismissed Mrs. Kroger's Complaint on the basis that the federal district court lacked original subject matter jurisdiction.

Sometime in 1976 or 1977, OE & E and PVS merged, PVS being the surviving corporation. On November 1, 1978, Mrs. Kroger again filed suits as Administratrix of the estate of James D. Kroger against OE

& E and PVS. These suits were instituted in federal district court and state district court in Iowa. Mrs. Kroger sought recovery in both actions for damages stemming from the alleged wrongful death of her husband in 1972. The defendant insurance company filed pleadings in both cases on behalf of OE & E and PVS. On January 17, 1979, the District Court of Pottawattamie County, Iowa, upheld a special appearance filed on behalf of OE & E and dismissed OE & E out of the suit. OE & E was dismissed from the state court action due to its merger into PVS.

This controversy once again comes before the Court as a result of PVS's filing a declaratory judgment action to establish that the defendant insurance company is obligated to defend PVS in the lawsuits filed by Geraldine Kroger, and to pay any judgments rendered against PVS in those lawsuits [Filing # 1]. PVS seeks declaratory relief because the insurance company maintains that the insurance policy does not afford coverage of the two Iowa lawsuits to PVS. In addition, the insurance company has demanded that PVS permit it to defend the Iowa cases under a reservation of rights.

The salient facts set forth above are not disputed by the parties. Based on these facts, both parties filed motions for summary judgment [Filings # 11 and # 14]. While not indicated on the face of its motion, the Court will treat defendant Great American's motion as one for partial summary judgment. In its reply brief in support of its motion for summary judgment, Great American notes that PVS has alleged facts that give rise to an argument that Great American is estopped from denying coverage due to its actions in defending PVS and OE & E in previous litigation instituted by Geraldine Kroger. Great American correctly concedes that estoppel raises a question of fact which would preclude the granting of a total summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. Great American takes the position that the Court may properly grant a partial summary judgment in its favor on the issue of whether the merger of OE & E and PVS resulted in PVS succeeding to the rights of OE & E under the insurance policy issued by Great American. The defendant insurance company is content to address the estoppel question at a later date in the event that it is granted partial summary judgment. Of course, on the other hand, PVS's position is that the estoppel question will be mooted if the Court grants summary judgment in its favor.

*Discussion and Analysis*

A. *The Merger of OE & E and PVS*

The most important issue in this case is the legal effect of the merger of OE & E and PVS, PVS being the surviving corporation. More specifically, the critical inquiry concerns the ramifications of the merger with respect to the insurance policy issued by the defendant.

Plaintiff and defendant agree that since OE & E and PVS were both Nebraska corporations, this case hinges on interpretation of the Nebraska Business Corporation Act provisions regarding mergers. In pertinent part, the statute provides:

Upon filing and recording in the office of the Secretary of State of the original of the articles of merger, the merger . . . shall be effected.

When such merger . . . has been effected:

.     .     .     .     .

(2) The separate existence of all corporations parties to the plan of merger or consolidation, except the surviving . . . corporation, shall cease;

(3) Such surviving . . . corporation shall have all the rights, privileges, immunities and powers and shall be subject to all duties and liabilities of a corporation organized under sections 21–2001 to 21–20, 134;

(4) Such surviving . . . corporation shall thereupon and thereafter possess all the rights, privileges, immunities, and franchises, as well of a public as of a private nature, of each of the merging . . . corporations; and all property, real, personal

and mixed, and all debts due on whatever account, including subscriptions to shares, and all other choses in action, and all and every other interest of or belonging to or due to each of the corporations so merged . . ., shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed; . . . .

(5) Such surviving . . . corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged . . .; and any claim existing or action or proceeding pending by or against any of such corporations may be prosecuted as if such merger . . . had not taken place, or such surviving . . . corporation may be substituted in its place. Neither the rights of creditors nor any liens upon the property of any such corporation shall be impaired by such merger or consolidation;

*Neb.Rev.Stat.* § 21–2075 (Reissue 1977).

PVS's argument is clear. It maintains that the statutory provisions set up a two–way street. In other words, since under sub–section (5) PVS as the surviving corporation of the merger is required to assume all the liabilities of non–surviving OE & E (including the contingent liability represented by pending lawsuits brought by Geraldine Kroger), under sub–section (4) PVS should be allowed to succeed to the rights of OE & E under the insurance policy issued by the defendant. As support for its construction of *Neb.Rev.Stat.* § 21–2075 (Reissue 1977), PVS cites *Chatham Corp. v. Argonaut Insurance Co.,* 70 Misc.2d 1028, 334 N.Y.S.2d 959 (1972); and *Aetna Life & Casualty v. United Pacific Reliance Insurance Companies,* 580 P.2d 230 (Utah 1978).

Defendant offers a radically different construction of Section 21–2075 as it relates to this case. Defendant contends that plaintiff's construction of the merger statute violates "the most fundamental tenet of insurance law," to wit, the existence of liability on the part of the insurer is predicated upon the existence of liability on the part of the insured. Defendant refers to PVS's argument that, while OE & E ceased

to exist at the time of the merger and therefore no longer can be held liable for the alleged wrongful death of James Kroger, defendant as the insurer of the non-surviving corporation can still be held liable. Based on its interpretation of what it feels to be fundamental insurance law, defendant contends that plaintiff's construction of the merger statute is untenable, despite the seemingly clear succession of rights language contained in sub–section (4).

In addition to challenging what appears to be the straight–forward statutory language, defendant maintains that the two cases relied upon by PVS are distinguishable and therefore should be accorded little weight in construing the statute. In an effort to distinguish the two cases relied upon by PVS, defendant points to certain policy provisions. First, defendant cites the policy provisions regarding assignment. Paragraph 10 of the Conditions section of the policy states: "Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon." Defendant argues that under plaintiff's interpretation of Section 21–2075, the merger of OE & E and PVS effectively constituted an assignment in contravention of the policy's express provisions. Defendant further asserts that it never consented to such an assignment.

Defendant also claims that plaintiff's statutory construction and case support is untenable due to the inclusion in the policy of a typical "no action" provision, which provides:

No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company . . . .

[Policy No. SLP 5–25–28–81, Conditions, paragraph 7]. Defendant points to the fact that no judgment against OE & E has yet

been obtained by Mrs. Kroger. As a consequence, defendant argues, the statutory succession of rights envisioned by plaintiff would constitute an assignment of the insurance policy, which again would violate the express terms of the parties' insurance contract.

As stated before, the defendant vehemently disagrees with PVS's construction of the merger statute. Defendant attacks the New York and Utah cases offered by plaintiff as materially distinguishable because the above–referenced policy clauses were not considered in those court decisions. Thus, defendant maintains that the question of this particular statutory provision is one of first impression.

The Court will first interpret Section 21–2075 without considering the impact of the two above–referenced policy provisions. The effect of those policy provisions will be left until later on in this Memorandum.

In *Aetna Life & Casualty v. United Pacific Reliance Insurance Companies*, 580 P.2d 230 (Utah 1978), the Supreme Court of Utah dealt with a problem very similar to the one involved here. This case involved an indemnification action brought by the insurer of the surviving corporation of a merger against the insurer of the merged corporation. While attending an office party, an employee suffered serious injury when the cork from a champagne bottle struck him in the eye. The employee sought to recover on the basis of negligence and breach of warranty. The champagne had been bottled by a company which was insured by the defendant United Pacific. Subsequent to the accident, the corporate wine bottler merged with plaintiff's insured pursuant to a statutory procedure substantially identical to that provided by the Nebraska Business Corporation Act. The sole legal question presented was which insurer had to bear the loss.

In *Aetna Life & Casualty*, the trial court granted summary judgment to Aetna, the insurer of the surviving corporation. The trial court reasoned that the liability for the injury was fixed at the time of the accident and that, at that time, the insurance provided by United Pacific was the only coverage for the non–surviving corporation and was thus coverage for the injured employee's claim. 580 P.2d at 232. In affirming the decision of the trial court, the Utah Supreme Court examined the state merger statutes and, specifically, the two Utah provisions which are nearly identical to *Neb. Rev.Stat.* § 21–2075 (4) and (5) (Reissue 1977). After doing so, the court stated:

> We think the fair and reasonable analysis of those statutory provisions is that, inasmuch as the merger of the corporations results in a transfer of liabilities of the merged corporation ... and also all of its rights, the logical conclusion is that the surviving corporation ... simply stands in the same position as that occupied by the merged corporation ... prior to the merger. Therefore, inasmuch as [the surviving corporation] is held to be responsible for the liability of [the merged corporation] (citing 19 Am.Jur.2d *Corporations* § 1554 (1965)), it is entitled to the protection which [the merged corporation] had (that is, its insurance with United Pacific) at the time of the accident, and that, as an asset of [the merged corporation] such coverage passed to ... the surviving corporation (citing *Chatham Corp. v. Argonaut Insurance Co.*, 70 Misc.2d 1028, 334 N.Y.S.2d 959 (1975)).

580 P.2d at 232.

As indicated above, the Utah opinion cited a lower New York state court decision. *Chatham Corp. v. Argonaut Insurance Co.*, 70 Misc.2d 1028, 334 N.Y.S.2d 959 (1972). *Chatham* involved facts quite similar to *Aetna Life & Casualty* and the instant case. Chatham Corporation was a successor by merger to Duraluminum Ladder Mfg. Co., Inc., which was named as an insured under a products liability policy issued by the defendant, Argonaut Insurance Company. While this policy was in effect, and prior to the merger of Duraluminum and Chatham, a woman sustained injury as the result of the collapse of a ladder manufactured by Baldwin Brush and Tools, Inc. The woman sued Baldwin. Baldwin in turn filed a third–party action against Chatham, claim-

ing that the woman's injury was caused by a defective component supplied by Chatham. In fact, the component was manufactured by Duraluminum. Chatham then filed a declaratory judgment action, seeking an adjudication that Argonaut was obligated to undertake, on its behalf, defense of the third–party action. *Chatham Corp. v. Argonaut Insurance Co., supra,* 334 N.Y.S.2d at 960. The court granted Chatham partial summary judgment, holding that Argonaut was obligated to defend the third–party action. *Chatham Corp. v. Argonaut Insurance Co., supra,* 334 N.Y.S.2d at 961.

In granting Chatham's motion for summary judgment, the court noted that Argonaut's issuance of the liability policy to Duraluminum cast upon the insurer contractual obligations which constituted an indebtedness owning to the insured. *Chatham Corp. v. Argonaut Insurance Co., supra,* 334 N.Y.S.2d at 961 (*citing Seider v. Roth,* 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966)). The court then stated:

> This asset of Duraluminum, upon its merger with plaintiff [Chatham], automatically vested in plaintiff as the surviving corporation by virtue of the provisions of ... the Business Corporation Law. It may be said, under the construction given this statute, that nothing is lost by a merger of corporations and that any right lawfully belonging to any of the constituent corporations merged together can be asserted by the surviving corporation.

*Chatham Corp. v. Argonaut Insurance Co., supra* 334 N.Y.S.2d at 961 (*citing Platt Corp. v. Platt,* 21 A.D.2d 116, 120, 249 N.Y. S.2d 75, 79 (1964), *aff'd.* 15 N.Y.2d 705, 256 N.Y.S.2d 335, 204 N.E.2d 495 (1965)).

█ The Court has closely scrutinized the analyses and holdings of the *Aetna Life & Casualty* and *Chatham* cases. Surprisingly, these appear to be the only two reported decisions dealing with this specific application of a merger statute. The Court agrees with the analyses of the Utah and New York courts, i. e., in light of the clear statutory language involved, the result reached that the insurer is liable appears to be logical, reasonable and, most importantly, fair.

## B. *The No Assignment Clause*

In its memorandum brief, defendant Great American states:

> Under the plaintiff's construction of *Neb. Rev.Stat.* § 21–2075–to the effect that the surviving corporation succeeds to all rights of both merging corporations including the right to enforce policies of insurance issued to the "merged" corporation–however, the merger in question here would have effectively constituted an assignment of OE & E's policy to PVS in contravention of the policy provisions.

Brief for Defendant In Support of Motion for Summary Judgment at 7. In a nutshell, defendant's argument is that the statutory construction advocated by plaintiff violates the insurance policy's no assignment clause.

Defendant's analysis is flawed. The interplay between the succession of rights language in a merger statute and an insurance policy's no assignment clause was squarely addressed by the Fifth Circuit in *Imperial Enterprises, Inc. v. Fireman's Fund Insurance Co.,* 535 F.2d 287 (5th Cir. 1976). This case involved a diversity action instituted to recover on a fire insurance manufacturer's output policy issued by the defendant insurer. The Court of Appeals held that under Georgia law, in the absence of an increase in risk or hazard to the insurer, a no assignment clause in the fire insurance manufacturer's policy would not be applied ritualistically and mechanically so as to forfeit coverage as a result of a transfer of the policy, without the insurer's consent, resulting from the statutory merger of two companies. *Imperial Enterprises, Inc. v. Fireman's Fund Insurance Co., supra,* 535 F.2d at 292–93.

The pertinent facts of *Imperial Enterprises* are quite similar to the instant case. "Carpet Mills" was a carpet manufacturing firm that was incorporated in Georgia in 1959. "Imperial Enterprises" was incorporated in Georgia in 1965. Its sole assets consisted of Carpet Mills stock and a note from that corporation. In 1969, Fireman's Fund issued a fire insurance policy which

named as insured Carpet Mills and the individual who was the president of both Carpet Mills and Imperial Enterprises. This policy provided fire coverage for the firm's plant facilities as well as for business interruption losses. A second insurance policy was issued by Fireman's Fund in 1970. Carpet Mills was the only named insured in this policy, which covered personal property, including inventory—output in the Carpet Mills plant. Carpet Mills and Imperial Enterprises merged in 1971 pursuant to the Georgia statutory merger scheme. Imperial Enterprises was the surviving corporation, but business continued as before under the Carpet Mills trade name, e. g., subsequent insurance premiums were paid on Carpet Mills' checks. Upon consummation of the merger, Carpet Mills' assets, including the insurance policies, were transferred to Imperial Enterprises by operation of the merger statute. Despite complying with the statutory provisions relating to the merger (i. e., public filings and notices), Carpet Mills did not take any formal action to assign the policies to Imperial Enterprises. Fireman's Fund was not notified concerning the transfer of the policies and it did not, of course, consent to it. In 1972, a fire occurred at the plant of Imperial Enterprises, damaging both the plant and its contents. Proof of loss statements were submitted to Fireman's Fund, which paid over $34,000.00 on the building policy. Later, though, the insurance company denied liability on the output policy on the basis of an allegedly wrongful assignment without its consent. *Imperial Enterprises, Inc. v. Fireman's Fund Insurance Co., supra,* 535 F.2d at 289–90.

Imperial Enterprises than sued Fireman's Fund in federal district court in Georgia to recover on the fire insurance output policy. Both parties submitted motions for summary judgment. The district court judge granted the insurer's motion, reasoning that the statutory merger and transfer of Carpet Mills' assets (including the output policy) resulted in an invalid assignment of the policy (because of the policy's no assignment clause) and a forfeiture of coverage.

The United States Court of Appeals for the Fifth Circuit disagreed with the district court's ruling and reversed. *Imperial Enterprises, Inc. v. Fireman's Fund Insurance Co., supra,* 535 F.2d at 289.

Since Imperial Enterprises was a diversity action, the court was compelled to follow Georgia substantive law under the mandate of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties agreed that there was no Georgia law on the narrow issue presented. But, the Fifth Circuit did review some broad principles of Georgia insurance law, e. g., (1) general rules concerning the construction of contracts apply to interpretation of insurance policies, (2) statutory provisions are in effect "read into" insurance contracts, (3) anti–assignment provisions are allowed per statute, (4) where the policy and the statute conflict, the latter prevails, (5) the insurer carries the burden of employing policy language that is clear and precise as to prohibitions, (6) if two or more reasonable interpretations of the policy are possible, the reading most favorable to the insured is adopted, and (7) insurance policies are construed to avoid forfeitures. *Imperial Enterprises, Inc. v. Fireman's Fund Insurance Co., supra,* 535 F.2d at 290.

After establishing the general state law framework, the court in *Imperial Enterprises* proceeded to analyze the policy provisions and the merger statute. The no assignment clause in the Fifth Circuit case is substantially identical to the one involved in the instant case. Also, the relevant provision of the Georgia statutory merger scheme is similar in that it provided:

[A]ll property, real, personal and mixed . . . and all other choses in action and all and every other interest of or belonging to or due to each of the corporations so merged or consolidated shall be taken and deemed to be transferred to and vested in such [the surviving] corporation without further act or deed . . . . *Ga.Code Ann* § 22–1007(b)(4) (1970).

*Imperial Enterprises, Inc. v. Fireman's Fund Insurance Co., supra,* 535 F.2d at 290–91.

This statutory language is quite similar to *Neb.Rev.Stat.* § 21–2075(4) (Reissue 1977).[1]

The Fifth Circuit decided not to address whether the statutory provision simply preempted the policy provision. Instead, it concluded that the clause's application was at least ambiguous under the circumstances of the case and the pertinent Georgia law. The court reasoned that the merger statute produced a transfer of the policies by operation of law, and that in other situations involving involuntary transfers and transfers by operation of law, the Georgia courts had consistently held that anti–assignment clauses do not operate to defeat coverage, e. g., (1) when title in an insurance policy passes from a wife to her husband because of the wife's death, and (2) when a note secured by a life insurance policy on a debtor's life issued in part for a creditor's benefit was assigned to another creditor. The rationale for not enforcing the clause in ritualistic fashion in such cases is a pragmatic one. Such transfers do not entail any increase in the risk or hazard assumed by the insurer. *Imperial Enterprises, Inc. v. Fireman's Fund Insurance Co., supra,* 535 F.2d at 291.

In utilizing a risk–focused analysis, the Fifth Circuit discussed at length and relied heavily on the Eighth Circuit's approach in the very similar case of *National American Insurance Co. v. Jamison Agency, Inc.,* 501 F.2d 1125 (8th Cir. 1974). The only distinguishing feature between the Fifth Circuit and Eighth Circuit cases is that the latter involved the transfer of assets upon corporate dissolution (as opposed to merger). Despite defendant Great American's contention to the contrary, though, this distinction is not a material one, i. e., the risk–focused analysis is the same.

The Court agrees with the analytical approach provided in *Imperial Enterprises.* Just as was the problem in Georgia, though, the narrow issue before the Court has never been addressed by the Nebraska Supreme Court. This, however, does not frustrate

adherence to the *Erie* doctrine. The Court is merely obliged to resolve the issue as the Nebraska state courts would. To make an intelligent determination of this question, the Court should consider any Nebraska authority "persuasively indicating the course of decisions within the state," *Cudahy Co. v. American Laboratories, Inc.,* 313 F.Supp. 1339, 1342 (D.Neb.1970), i. e., principles of general insurance law and rules regarding forfeitures.

It has been shown above that the no assignment clauses and the merger statutes are substantially the same in *Imperial Enterprises* and the instant case. It also appears that the seven general principles of Georgia insurance law discussed in *Imperial Enterprises* are also evident in Nebraska, i. e., (1) an insurance policy should be construed in the same manner as any other contract in order to give effect to the intent of the parties at the time it was made, *Kent v. Dairyland Mutual Insurance Co.,* 177 Neb. 709, 721, 131 N.W.2d 146, 153 (1964), (2) statutory requirements must be complied with by insurers and if a policy fails in this respect, the statute will be "read into" the policy, *State Farm Mutual Automobile Insurance Co. v. Selders,* 187 Neb. 342, 347, 190 N.W.2d 789, 792 (1971), (3) in certain instances, anti–assignment provisions are allowed (per case law in Nebraska, though, as opposed to per statute in Georgia), *Connolly v. Providence Washington Insurance Co.,* 126 Neb. 303, 311, 253 N.W. 340, 344 (1934), (4) where the applicable statutory provision conflicts with the provisions of an insurance policy, the statute controls, *Rudder v. American Standard Insurance Co.,* 187 Neb. 778, 780, 194 N.W.2d 175, 176 (1972), (5) the issuer who drafts the policy has the burden of plainly expressing exceptions and limitations if it seeks to have a court construe and enforce the policy as expressed, *see Wyatt v. Woodmen Accident & Life Co.,* 194 Neb. 614, 617, 234 N.W.2d 217, 219 (1975), (6) where the insurance contract is reasonably susceptible to two or

1. In his brief, defendant's attorney claims that the Georgia merger statute is materially different from the Nebraska statute in that only the

former contains language regarding transfer of "choses in action." He is in error.

more interpretations, the one most favorable to the insured will be adopted, *Dale Electronics, Inc. v. Federal Insurance Co.,* 205 Neb. 115, 120, 286 N.W.2d 437, 441 (1979), and (7) where there are two conflicting interpretations of an insurance policy clause, one of which would cause forfeiture and the other coverage, the policy is to be construed in favor of the insured in order to avoid forfeiture, *Beister v. John Hancock Mutual Life Insurance Co.,* 356 F.2d 634, 642 (8th Cir. 1966); *Great Plains Insurance Co. v. Kalhorn,* 203 Neb. 799, 803, 280 N.W.2d 642, 645 (1979).

The Court is inclined to say that under the circumstances of this case *Neb.Rev.Stat.* § 21–2075 (Reissue 1977) simply overrides the no assignment clause of the defendant's insurance policy. But, in keeping with the analysis of *Imperial Enterprises,* the Court chooses not to make such a statement. Instead, the Court agrees with the Fifth Circuit that the clause's application is "at least ambiguous" in light of applicable state law. Accordingly, it is appropriate to examine from the perspective of the Nebraska courts the interplay between a no assignment clause and other types of involuntary transfers and transfers occurring by operation of law, as this was the approach taken in *Imperial Enterprises.*

The *Imperial Enterprises* court had the advantage of specific state law guidance regarding the interplay spoken of just above. Unfortunately, the Nebraska Supreme Court has not yet had the need to address such a case. Therefore, the Court will consider the decisions of other jurisdictions, since it is clear that the Nebraska Supreme Court would also consider this authority in making its decision. *Seedkem v. Safranek,* 446 F.Supp. 340, 341 (D.Neb. 1979). It seems well recognized that a provision limiting assignment in an insurance policy simply does not apply to a transfer occurring by operation of law. For example, in *Starkweather v. Cleveland Insurance Co.,* 22 Fed.Cas. 1091, 1092–93 (N.D.Ohio 1870), and *Appleton Iron Co. v. British American Assurance Co.,* 46 Wis. 23, 29–30, 34, 1 N.W. 9, 11, 50 N.W. 1100, 1102 (1879), the courts held that the anti–assignment

language in an insurance policy was not violated by involuntary transfers in bankruptcy to which the insurer had not expressly consented. *Compare, Dube v. Mascoma Mutual Fund Insurance Co.,* 64 N.H. 527, 528, 15 A. 141, 142 (1888) (assignment for the benefit of creditors is not a transfer by operation of law outside the scope of a policy's no assignment clause). Similar to the holdings of the cases couched in a bankruptcy setting is the rule that the typical no assignment clause is not offended by the assignment of a policy interest by a retiring partner to his copartners. *Strahorn v. Kansas City Fire & Marine Insurance Co.,* 241 Iowa 991, 995–97, 42 N.W.2d 903, 905–06 (1950).

In keeping with the *Imperial Enterprises* analysis, mention should be made of the risk factor. The Fifth Circuit pointed out that the rationale for refusing to apply the no assignment clause to transfers by operation of law is that there is no increased risk assumed by the insurer despite its lack of consent to the transfer. Under the facts of this particular case, this factor is especially relevant. In *Imperial Enterprises,* the loss occurred after the merger, and still the court held that the insurer was not exposed to an increased risk. In this case, the loss occurred prior to the merger. Therefore, defendant Great American cannot realistically contend that it is prejudiced in the way of risk exposure by the Court's refusal to enforce the policy's anti–assignment language.

At this point, it might be helpful to summarize. It is the Court's opinion that the language of *Neb.Rev.Stat.* § 21–2075 (Reissue 1977) is perfectly clear. That is, if PVS is saddled with a contingent liability to Mrs. Kroger as a result of merging with OE & E, it should also be allowed to benefit by the duty of defendant Great American to provide defense counsel in the Kroger suits. This statutorily conferred benefit should not be fettered by having to sign a reservation of rights agreement with the insurer. This common sense result is bolstered by the *Chatham* and *Aetna Life & Casualty* cases decided by New York and Utah

courts, respectively. Ritualistic application of the no assignment clause in this instance would only serve to frustrate that common sense result.[2]

### C. *The No Action Clause*

Defendant Great American contends that the policy's no action clause somehow bars a declaratory judgment in favor of PVS. After reciting the express terms of the policy provisions, the defendant points out that no judgment has yet been entered against OE & E or PVS on account of Geraldine Kroger's claim. In convoluted fashion, defendant reasons: "As a consequence of the absence of a judgment against the insured, and thus the absence of a 'loss,' the 'succession of rights' envisioned by the plaintiff would constitute, not an assignment of a right to sue on the policy, but rather an assignment of the policy itself." Defendant goes on to say that such a result would violate the no assignment clause of the policy.

The defendant's argument in this regard is frivolous and amounts to no more than an effort to smokescreen its already weak positions on the other legal points involved in this case. The no action clause relied upon by defendant has little or no application to this declaratory judgment action. The typical no action clause is pertinent only in regulating direct actions brought by claimants against insurance companies on the basis of the insured's liability. R. Anderson, *Couch on Insurance 2d* §§ 45:835, 45:838 (1964). That is, defendant Great American might raise the no action clause as a defense to a suit brought at this time by Mrs. Kroger because she has not yet obtained a judgment or agreement that OE & E and/or PVS are primarily liable for her husband's death. In sum, the no action clause simply is not relevant in this declaratory judgment action, which was brought only to determine the defendant's duty to defend plaintiff in the Kroger suits without a reservation of rights.

### D. *Attorney's Fees*

In its complaint seeking declaratory relief, PVS alleges that this action falls within the purview of *Neb.Rev.Stat.* § 44–359 (Reissue 1978), and that accordingly it is entitled to recover from defendant attorney's fees incurred in the conduct of this litigation. The Nebraska statute, of course, conditions a fee award upon the insured prevailing. Plaintiff satisfies this requirement.

The fact that plaintiff brought this action in federal court is not a problem in regard to awarding attorney's fees under the Nebraska statute. *People of Sioux County v. National Surety Co.*, 276 U.S. 238, 243, 48 S.Ct. 239, 240, 72 L.Ed. 547 (1928). Nor is it a problem that PVS has not yet incurred a fixed liability to Mrs. Kroger, i. e., attorney's fees are allowable in declaratory judgment actions. *State Farm Mutual Automobile Insurance Co. v. Selders*, 189 Neb. 334, 336, 202 N.W.2d 625, 626 (1972); *Workman v. Great Plains Insurance Co.*, 189 Neb. 22, 28–29, 200 N.W.2d 8, 12 (1972).

■ Having prevailed in obtaining the declaratory judgment it sought, PVS is entitled to attorney's fees under Section 44–359. The Court could award a fee at this time without any evidence having been introduced on that issue. *Globe Indemnity Co. v. Sulpho–Saline Bath Co.*, 299 F. 219, 222 (8th Cir. 1924). The Court, however, feels that it would be preferable not to make such an award at this time.

■ The amount of attorney's fees allowed generally rests in the sound discre-

---

**2.** The approach that defendant would have the Court take in regard to the no assignment clause's interplay with the statutory merger of OE & E and PVS brings to mind the commentary of Chief Justice Ryan of the Wisconsin Supreme Court, who stated:

> If the crafty conditions, with which ... insurance companies fence in the rights of the assured, and the subtle arguments which

their counsel forced upon them, were always to prevail, these corporations would be reduced almost to the single function of receiving premiums for little or no risk.

*Appleton Iron Co. v. British American Assurance Co.*, 46 Wis. 23, 32, 1 N.W. 9, 9 (1879) (prefatory comment to holding that no assignment clause was not violated by an involuntary transfer in bankruptcy).

tion of the court. *Schmer v. Hawkeye–Security Insurance Co.*, 194 Neb. 94, 97, 230 N.W.2d 216, 218 (1975). The amount allowed should be based upon the Court's (1) observance of the proceedings, (2) the amount involved, (3) the questions of law raised, the time and labor necessary, and the professional skill and diligence required by the case. *McNaught v. New York Life Insurance Co.*, 145 Neb. 694, 706, 18 N.W.2d 56, 63 (1945).

Based on a review of the court file and observance of the oral argument on the motions for summary judgment, the Court has a rough idea of what sort of attorney's fee should be awarded to PVS. Still, it is advisable that PVS's attorney be allowed to make a showing of claimed actual fees incurred on behalf of her client. The Court suggests that this be done by way of affidavit and a short, explanatory memorandum brief. Defendant Great American, of course, should be allowed to challenge or rebut the fees sought by PVS. Oral argument on an evidentiary hearing will be conducted if either of the parties so request.

*Conclusion*

For the reasons stated above, it is the opinion of the Court that plaintiff's motion for summary judgment should be granted, and that it should be awarded attorney's fees pursuant to *Neb.Rev.Stat.* § 44–359 (Reissue 1978). Accordingly, defendant's motion for partial summary judgment should be denied. The decision of the Court shall be considered final for purposes of any appeal that may be sought, except on the issue of the award of attorney's fees which shall be decided at a later date.

An order shall issue contemporaneously with this Memorandum.